# In the United States District Court
## for the
## Western District of Texas

| | | |
|---|---|---|
| Professional Performance | § | |
| Development Group, Inc. | § | |
| | § | SA-12-CV-248-XR |
| v. | § | |
| | § | |
| Donald L. Mooney LLC | § | |
| d/b/a Nurses Etc. Staffing | § | |

## ORDER

On this day came on to be considered Plaintiff's motion to remand (dkt. no. 3).

## Background

Plaintiff PPDG initially filed this case in the 438th Judicial District Court of Bexar County, Texas on February 27, 2012.  Plaintiff alleges that it provides "medical, social, professional and technology services" to the federal government. The Defendant (also known as Nurses Etc Staffing or "NES") is a healthcare staffing company.  Plaintiff alleges that on or about April 14, 2008, it and NES entered into a Teaming Agreement, under which they would work together to submit a proposal to obtain a contract from U.S. Army MEDCOM to provide nursing services at various bases in San Antonio, Texas.  In February 2009, NES was awarded the contract, and Plaintiff alleges that it expected NES to enter into a subcontracting agreement with it at that time pursuant to the terms of the

earlier Teaming Agreement.  Eventually a subcontracting agreement was entered into by the parties, but Plaintiff alleges that NES breached its terms. Plaintiff alleges that the subcontracting agreement provided that it would provide 49% of the nursing services required under the government contract. Plaintiff further alleges that the subcontracting agreement contained provisions that required NES to submit Plaintiff's invoices to MEDCOM within two working days of receipt and NES to pay Plaintiff within five days of receiving funds from the government.

In the state court petition, Plaintiff alleges causes of action for breach of contract, fraudulent inducement, and unjust enrichment.  It also sought appointment of an auditor, and a detailed accounting of the invoices and income received by NES as a result of the nursing contract.  It also sought a temporary restraining order to require NES to submit various invoices to Brooke Army Medical Center for payment.  On the same date, Plaintiff filed an "Emergency Motion for Expedited Discovery" seeking to depose a corporate representative of the Defendant and requesting various documents relating to the teaming agreement, the proposal to the government contract, and invoices related to the nursing contract. The state court issued an ex parte temporary restraining order granting Plaintiff the relief sought and ordering the deposition to take place on March 12, 2012.

On March 1, 2012, NES filed in state court a motion for rehearing seeking relief from the ex parte TRO.  NES also stated that invoices Plaintiff requested be submitted have been submitted.

On March 5, 2012, Plaintiff filed in the state court a motion to appoint auditor.  On March 8, the parties signed a "Rule 11 Agreement" wherein they agreed to stay the litigation for a period of seven days and to allow for an audit of the invoices in this matter.  Despite the "Rule 11 Agreement", on March 9 and March 12, NES filed an application to compel arbitration and abate the state court proceedings based upon both the teaming agreement and the subcontracting agreement.  On March 15, NES filed an "Emergency Motion to Dissolve Temporary Restraining Order."  A hearing was scheduled in the state court on March 16 on various motions that had been filed.

On March 15, NES removed the case to this federal court alleging federal question jurisdiction.  On March 19, NES filed its motion to remand.

## Notice of Removal

In its notice of removal, Defendant stated, in part, as follows:

> The centerpiece of the Plaintiff's complaint is that the Defendant failed to timely process invoices which were submitted from the subcontractor Plaintiff to the Defendant.  However, the methodology for processing such invoices are established pursuant to regulations of the federal government, and administered by the MEDCOM Health Care Centers with whom the Defendant had its primary contract. The invoices are first reviewed locally by an employee of MEDCOM, and then returned for further refinement by NES and/or PPDG. They were then submitted into a formal pipeline for payment through separate channels of the federal government. With respect to the payments which are in dispute, 31 U.S.C.A. §3903 sets forth as follows....  In addition thereto, the government is required to make payment in accordance with the Prompt Payment Act, 31 USC §3903 and the Prompt Payment Regulations contained at 5 CFR part 1315, or suffer penalties spelled out in other federal regulations....

> This case is removal [sic] pursuant to 28 USC §1441 based on federal question jurisdiction existing under 28 USC §1331. Suits

concerning the payments sought by the Plaintiff in this case involves the interpretation of a federal government contract and federal common law. In addition, NES's federal contract arguably falls under the authority of 10 U.S.C. §1091, i.e., Personal Services contracts. Personal service contracts are administered under 32 CFR § 107.1 et seq., and 48 CFR §37.000 et seq. (referenced as FAR Part 37 by 32 CFR §107.1 et seq.). PPDG's claims are governed by the federal contract NES has, and the underlying regulatory rules and law that govern said contract. Therefore, the claim arises under federal law.... This case is also removable under 28 USC § 1442(a)(1), since the Plaintiff is suing NES in connection with actions performed under the direction of a federal agency and federal officers. A Defendant is deemed to act under the direction of a federal agency and federal officers where the actions at issue were taken in the course of administering a federal program over which a federal agency and its officers have comprehensive and detailed control or supervision.

## Motion to Remand

Plaintiff acknowledges that NES has a contract with MEDCOM, but argues that it is not a party to that contract and does not allege that NES has breached that contract. It argues that NES's invoicing and payment obligations to PPDG arise from the subcontracting agreement between NES and PPDG. Accordingly, it argues that the "mere fact that NES has a contract with MEDCOM does not create federal question jurisdiction [under 28 U.S.C. § 1331]." It further argues that no federal jurisdiction exists under 28 U.S.C. § 1442(a)(1)[1] as claimed by Defendant.

---

[1] "A civil action ... that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:  (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue."

4

**Standard**

Generally, a defendant may remove a civil case filed in state court if a federal court would have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The removing party bears the burden of establishing the existence of federal jurisdiction. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. *See, e.g., Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The Court must remand the case to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

**Analysis**

The subcontract agreement provided that NES would submit PPDG's invoices to MEDCOM within two working days of their receipt. The agreement also states: "The Prime [NES] agrees to ensure that all invoices are accepted or rejected by the Government within seven days of invoice submission as required by 5 CFR Part 1315.... The prime agrees to request interest and penalties for all invoices that are not paid on the payment date due as defined and required by 5 CFR Part 1315.... [NES] will deposit into [PPDG's] bank account the amount of the approved invoice within five (5) days of receiving the funds from the government." Attachment B to Subcontract Agreement, para. Nos. 2.2 and 2.3.

In its Notice of Removal, Defendant appears to be stating that despite the language of the subcontract agreement, pursuant to the federal government's demands, the "invoices are first reviewed locally by an employee of MEDCOM, and then returned for further refinement by NES and/or PPDG. They [are] then submitted into a formal pipeline for payment...." It further states that "the substantial majority of the payments in controversy were in fact submitted to and partially processed by the federal government, and are overdue, with interest, as calculated by federal regulations and the prime contract between Plaintiff and MEDCOM...."

The mere fact that the federal government is demanding some pre-formal submission of invoices for some type of quality control check and there are federal regulations that govern prompt payment, however, does not cause Plaintiff's state law claims to "arise under" federal law. The fact that federal law may provide a defense to a state claim is insufficient to establish federal question jurisdiction. *See Hart v. Bayer Corp.*, 199 F.3d 239, 244 (5th Cir. 2000).

Under the "well-pleaded complaint" rule, a federal court has original or removal jurisdiction only if a federal question appears on the face of the plaintiff's well-pleaded complaint; generally, there is no federal jurisdiction if the plaintiff properly pleads only a state law cause of action. *See Franchise Tax Bd. v. Const. Laborers Vacation Trust*, 463 U.S. 1, 10–11 (1983).

However, a case pleading only state law claims may arise under federal law "where the vindication of a right under state law necessarily turn[s] on some

construction of federal law." *Franchise Tax Bd.*, 463 U.S. at 9. The federal courts have jurisdiction over a state law claim that "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod. Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

The Court has reviewed analogous cases wherein subcontractors and general or prime contractors working pursuant to a government contract have raised breach of contract claims and the issue of federal question has arisen. *See e.g., L'Garde, Inc. v. Raytheon Space & Airborne Systems*, 805 F. Supp. 2d 932 (C.D. Cal. 2011); *Stevens Aviation, Inc. v. DynCorp Intern. LLC*, 2009 WL 2997413 (D.S.C. 2009); *Kormendi/Gardner Partners v. Surplus Acquisition Venture*, LLC, 606 F. Supp. 2d 114 (D.D.C. 2009); *Parlin v. DynCorp Intern., Inc.*, 579 F. Supp. 2d 629 (D. Del. 2008); *Huber, Inc. v. Neptune Sciences, Inc.*, 2008 WL 294697 (E.D. La. 2008); *Kostmayer Const., L.L.C. v. M.R. Pittman Group, L.L.C.*, 2007 WL 4553991 (E.D. La. 2007); *C&H Contracting of MS, LLC v. Lakeshore Eng'g Services*, 2007 WL 2461017 (S.D. Miss. 2007); *Vetro, Inc. v. Active Plumbing & Heating, Inc.*, 403 F. Supp. 2d 1033 (D. Colo. 2005).

All of these cases have held that the connection to the contract between the prime contractor and the Government is too far removed from the subcontract at issue to establish subject matter jurisdiction. This Court agrees. The Court lacks subject matter jurisdiction.

With regard to Defendant's second basis for removal (28 U.S.C. § 1442(a)(1)), in order to establish federal officer removal jurisdiction, the defendant must establish: (1) that it is a "person" within the meaning of the statute; (2) that the defendant acted pursuant to a federal officer's directions and "that a causal nexus exists between the defendant's actions under color of federal office and the plaintiff's claims"; and (3) that a "colorable federal defense" exists. *Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431 (1999).

The federal officer must have "direct and detailed control over the defendant" such that "the acts that form the basis for the suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Ryan v. Dow Chemical Co.*, 781 F. Supp. 934, 947 (E.D.N.Y. 1992). However, if the party "establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to § 1442(a)(1) removal." *Arness v. Boeing North Am., Inc.*, 997 F. Supp. 1268, 1273 (C.D. Cal. 1998) (*citing Good v. Armstrong World Industries, Inc.*, 914 F. Supp. 1125, 1128 (E.D. Pa.1996)).

In this case, Defendant has alleged only that the relevant acts occurred under the general auspices of federal direction.  Accordingly, it is not entitled to § 1442(a)(1) removal.

## Conclusion

For the above-stated reasons, Plaintiff's motion to remand (docket no. 3) is GRANTED.  This Court lacks subject matter jurisdiction.  Further, Defendant

is not entitled to § 1442(a)(1) removal.  It is therefore ORDERED that this case

be REMANDED to the 438th Judicial District Court of Bexar County, Texas.

It is so ORDERED.

SIGNED this 26th day of March, 2012.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE